# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MORRIS, individually and as successor-in-interest of JASON MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, a State of California agency, SCOTT KERNAN, Secretary of CDCR, JOHN SUTTON, Warden, Wasco State Prison, and DOES 1-150, inclusive and jointly and severally,<br><br>Defendants. | **CASE NO. 1:17-cv-01488-AWI-MJS**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## I. Introduction

Plaintiff Jennifer Morris brings the instant wrongful death and civil rights action against the California Department of Corrections and Rehabilitation ("CDCR") and several of its employees in relation to the death of her husband Jason Morris in CDCR custody. In short, Plaintiff contends that Defendants, although knowing the risk, improperly housed Mr. Morris, a convicted sex offender, with a cellmate serving a sentence for assault with a deadly weapon. Complaint, Doc. 1 ("Compl.") at ¶¶ 16, 32. Despite Mr. Morris telling correctional "officers, counselors, and/or other agents that he needed a higher level of protection and that he feared for

1

his safety because of the nature of his offense," those officers refused to afford Mr. Morris appropriate housing. Compl. at ¶ 16. On February 7, 2017, Mr. Morris was strangled to death by his cellmate. Compl. at ¶ 19. All of Plaintiff's causes of action are based on those basic facts.

Plaintiff alleges six causes of action: (1) a section 1983 claim against the Doe Defendant officers in relation to their housing classification, supervision, and protection of Mr. Morris giving rise to First, Eighth and Fourteenth Amendment violations; (2) a section 1983 individual capacity, supervisory liability claim against the supervisory defendants that failed to adequately train or supervise their correctional officer employees; (3) a section 1983 *Monell* liability claim against the CDCR and policymaker employees; (4) a California Bane Act claim that parallels Plaintiff's first cause of action; (5) a negligence claim; and (6) a wrongful death claim.

Defendants move to dismiss the second through sixth causes of action against Defendants Kernan and Sutton, and all claims against the CDCR. Plaintiff opposes that motion. For the following reasons, Defendants' motion will be granted in part and denied in part

## II. Factual Background

Jason Morris was committed to the CDCR on November 8, 2016 to serve two concurrent three-year sentences. Compl. at ¶¶ 12,17. Although the precise character of Mr. Morris's offenses of conviction were not disclosed, Plaintiff alleges that at least one of those offenses was a sex offenses involving a minor. *Id*. at ¶ 16, 32. Despite knowing of Mr. Morris's offense of conviction, which placed him at higher risk than other inmates who had not committed sex crimes, the Doe Defendants responsible for housing classification placed Mr. Morris with a violent offender, convicted of assault with a deadly weapon. *Id.* at ¶ 32. Mr. Morris and his cellmate were housed in a "double cell in the [Sensitive Needs Unit.]" *Id.* at ¶¶ 23, 32. Defendants Kernan, Sutton, and the Doe Defendants "knew or should have known that the homicide rate in the Sensitive Needs … Unit was almost twice as high as the general population yard." *Id.* at ¶ 23. Despite that knowledge, Defendants took no steps to protect Mr. Morris. *Id.*

The unknown cellmate strangled Mr. Morris to death on February 7, 2017 at some time before 3:00 p.m. *Id*. at ¶ 19. Mr. Morris was 43 years old at the time of his death. *Id.* at ¶ 11. Mr. Morris is survived by his wife, Jennifer Morris. *Id.*

2

Plaintiff names as a defendant the CDCR, "a public entity and … a California state agency that operates California state prisons, including the facilities where [Mr. Morris] was incarcerated" at the time of his death. Compl. at ¶ 4. The named individual defendants in this action are Scott Kernan ("Defendant Kernan"), "Secretary of the CDCR and highest policymaking official of CD[CR]," Compl. at ¶ 4(a), and John Sutton ("Defendant Sutton"), warden of Wasco State Prison ("Wasco"), Compl. at ¶ 4(b). Plaintiff represents that both Defendants Sutton and Kernan were responsible, in some form, for housing and classification of CDCR inmates. Compl. at ¶¶ 4(a)-(b).

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 278 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). If a Rule 12(b)(6) motion is granted, the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend should be granted unless amendment would be futile. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002); *see Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (requiring that "leave to amend … be granted with extreme liberality") (internal quotation marks omitted).

## IV. Discussion

A. Plaintiff's Second Cause of Action: Section 1983 Supervisory Liability

Defendants seek dismissal of Plaintiff's second cause of action as it relates to the two named defendants, Defendants Kernan and Sutton. Defendants argue that Plaintiff fails to adequately plead facts that would tend to indicate that either defendant knew of the allegedly unconstitutional conduct by their subordinates. Doc. 6-1 at 11. They contend that Plaintiff's allegations amount to little more than legal conclusion. *Id.*[1]

Plaintiff responds by repeating the allegations of the complaint: "Plaintiff alleges that Defendants Kernan and Sutton, and the individuals they supervised knew [that Mr. Morris] was a convicted sex offender, and that he had specifically told officers, counselors, and/or other agents that he needed a higher level of protection and he feared for his safety because of the nature of

---

[1] In their motion to dismiss, Defendants do not challenge the underlying alleged constitutional violation—that known inappropriate housing caused Plaintiff's death. However, in Defendants' reply, they contend for the first time that "the housing decision" allegedly made by the subordinates of the named defendants does not constitute a constitutional violation which could support a derivative claim for supervisory liability. Doc. 8 at 1-2. Because Defendants' initial argument was devoid of any suggestion that it sought to challenge the validity of the underlying alleged constitutional violation arising from the housing assignment, Plaintiff has had no opportunity to respond and consideration of that argument is therefore not appropriate here. *Moralez v. Vilsack*, 2017 WL 1354692, *1 n.1 (E.D. Cal. Apr. 7, 2017) (citing, *inter alia*, *Publius v. Boyer-Vine*, 2017 WL 772146, *22 n.23 (E.D. Cal. Feb. 27, 2017)).

4

his offense." Doc. 7 at 3 (citing Compl. at ¶ 16). "Plaintiff also alleges that Wasco was overcrowded at the time [Mr. Morris] was murdered, which contributed to" Mr. Morris's placement on double cell status. Doc. 7 at 4 (citing Compl. at ¶ 21). Plaintiff then reiterates the alleged role of both named defendants: "Defendant Sutton was responsible for proper housing of inmates at Wasco" and "Defendant Kernan was responsible for" creation of housing policies that "created the overcrowding" and "placement of Mr. Morris in a double cell with a violent offender." Doc. 7 at 4 (citing Compl. at ¶ 4(a)-(b)).

Section 1983 suits alleging constitutional rights violations by government officials cannot rely on respondeat superior liability. *Iqbal*, 556 U.S. at 677. In order to demonstrate a civil rights violation, a plaintiff must show either direct, personal participation or some sufficient causal connection between the defendants' conduct and the alleged constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1205–1206 (9th Cir. 2011). In order to prevail on such a theory, a plaintiff must plead facts from which an inference can be drawn that the supervisor, at least, knew of and acquiesced in the unconstitutional conduct of his or her subordinate. *Starr*, 652 F.3d at 1207; *Rocha v. Marciano*, 2017 WL 663197, *4 (C.D. Cal. Feb. 17, 2017). For instance, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998); *accord Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen* v. *Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks and citation omitted).

The allegations of Plaintiff's second cause of action, as to both Defendants, are very broad and formed as legal conclusion. Plaintiff alleges that Defendants Sutton and Kernan "directed his or her subordinates in conduct that violated [Mr. Morris's] rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive [Mr. Morris] of rights, OR knew his or her subordinates were

5

engaging in acts likely to deprive [Mr. Morris] of rights and failed to prevent … such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Decedent's rights…." Compl. at ¶ 40 (citing 9th Cir. Model Instr. 9.4). Plaintiff argues that the Court "must assume that all general allegations 'embrace whatever specific facts might be necessary to support them.'" Doc. 7 at 4 (quoting *Peloza v. Capistrano Unified School Dist.* 37 F.3d 517, 521 (9th Cir. 1994)). Defendant is correct that *Peloza* no longer offers a correct statement of the law to the extent that it suggests a lesser standard that the plausibility requirement set out in *Twombly* and *Iqbal*. *See Vogel v. Oceanside Unified School Dist.*, 2014 WL 4101235, *1 (S.D. Cal. Aug. 18, 2014) (*Peloza* relied on "the old *Conley* standard…, specifically disapproved in *Twombly*."); *Southwest Engineering, Inc. v. Yeomans Chicago Corp*. 2009 WL 3720374, *1 n.2 (S.D. Cal. Nov. 3, 2009). Plaintiff may no longer make threadbare general allegations and ask the Court to assume that factual support exists. The Court looks to Plaintiff's few underlying factual allegations in an effort to determine which, if any, of the legal conclusions have related factual support.

There is no factual allegation in the complaint that would tend to suggest that either Defendant offered direction to a subordinate regarding Plaintiff's housing. Similarly, there is no factual allegation regarding what, if any, training deficiency may have caused the alleged rights violation.

With respect to Defendant Sutton, no facts are alleged that would tend to indicate that he knew of the allegedly unconstitutional conduct by his subordinates of placing Mr. Morris in a double cell and maintaining that placement even after Mr. Morris advised officers and others that he believed that he was in danger. Plaintiff's bald assertion that Defendant Sutton knew of the constitutional violation is inadequate. *Wright v. Yanos*, 2017 WL 6040335, *5 (E.D. Cal. Dec. 6, 2017) ("Listing each Defendant's employment position and the general responsibilities of somebody in that role, is not enough to establish the requisite state of mind for what specific knowledge each Defendant possessed and how each Defendant acted, or failed to act, with such knowledge."); *Green v. Boggust*, 2016 WL 3267712, *5 (C.D. Cal. Apr. 25, 2016) (allegation that the sheriff in charge of the jail should have known about inadequate medical care was

insufficient to state a claim).

Similarly, with respect to Defendant Kernan, there are no facts alleged that would tend to suggest that Defendant Kernan knew of unconstitutional conduct by his subordinates. Next, Plaintiff generally alleges that Defendant Kernan created the housing policy that led to the alleged constitutional deprivation. However, from the complaint, it is unclear what specific policy Defendant Kernan created that led to the alleged deprivation. Plaintiff outlines the CDCR Inmate Housing Assignment policy and its considerations: CDCR staff approving housing assignments must consider "lengthen of sentence, enemies and victimization history, criminal influence demonstrated over other inmates, vulnerability due to medical, mental health and disabilities, reasons for segregation, history of 'S' suffix determination, history of in-cell assaults and/or violence, prison gang … affiliation, [and] nature of the offense," among other considerations. Compl. at ¶ 15 (citing 15 C.C.R. § 3269(a)). It is unclear as to whether Plaintiff asserts that section 3269 sets out an unconstitutional policy or whether Defendant Kernan created some other policy that caused overcrowding at Wasco. Although creation of an unconstitutional policy may give rise to a valid deliberate indifference claim, *see Miller v. California*, 2017 WL 85782, *8 (E.D. Cal. Jan 9, 2017) (holding that a defendant's creation of an unconstitutional policy that causes the alleged deprivation is sufficient to state a deliberate indifference claim against that defendant), it is inadequate for a plaintiff to allege that "'generally created policies and procedures … led to a violation[] without alleging a specific policy or specific event instigated by [the supervisory defendant] that led to the constitutional violation[,]'" *Johnson v. City of Berkeley*, 2016 WL 928723, *4 (N.D. Cal. Mar. 11, 2016) (quoting *Cox v. California Forensic Med. Grp.*, 2015 WL 237905, *1 (N.D. Cal. Jan. 14, 2015)).

Moreover, even assuming that Defendant Kernan created an unconstitutional policy, Plaintiff alleges that Defendant Kernan's "subordinates were violating … CDCR policy and/or acting negligently pertaining to the classification and housing of inmates…." Compl. at ¶ 25. As such, it does not appear from the allegations that the allegedly unconstitutional policy caused any constitutional deprivation.

Plaintiff has inadequately alleged facts to support a claim of supervisory liability as to

Defendants Kernan and Sutton. Allegation of additional facts could cure the defects identified. Plaintiff's second cause of action will be dismissed as to Defendants Kernan and Sutton with leave to amend.

B. Plaintiff's Third Cause of Action: *Monell* Liability

Plaintiff's third cause of action, alleged "against all defendants," indicates that it is premised upon the principles set forth in *Monell v. New York City Dept. of Soc. Serv's*, 436 U.S. 658 (1978). Compl. at ¶ 44. Plaintiff misunderstands *Monell* liability. *Monell* permits a plaintiff to bring suit against a municipality when he or she has suffered a civil rights violation caused by a custom, practice, or policy created by the municipality. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690-691; *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). *Monell* liability cannot attach to an individual (in his or her individual capacity) or a State entity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989) (explaining that States are protected by the Eleventh Amendment while municipalities are not, and noting that Monell is limited to "local government units," which are not considered part of the State for Eleventh Amendment purposes); *Kentucky v. Graham*, 473 U.S. 159, 165-170 (1985) (explaining the distinction between individual and official capacity claims and explaining that an official-capacity suit is a suit against the entity); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (holding that the Eleventh Amendment bars application of the *Monell* doctrine against state entities). All of the Defendants are individual employees of the State or State entities. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (holding that the CDCR is a state entity entitled to Eleventh Amendment immunity); *Leer v. Murphy*, 844 F.2d 628, 631-632 (9th Cir. 1988) . Plaintiff's *Monell* claim will be dismissed without leave to amend as to all defendants.

C. Plaintiff's Fourth Cause of Action: Bane Act Violation

Plaintiff concedes that she fails to state a Bane Act, Cal. Civil Code § 52.1, claim against Defendant Sutton. That claim will be dismissed without leave to amend as to Defendant Sutton.

D. Plaintiff's Fifth Cause of Action: Negligence

Plaintiff's negligence claim is in similar form as the allegations of her supervisory

liability claim—she broadly alleges the existence of various duties owing from Defendant Sutton and Doe Defendants 1 through 150 to Mr. Morris. Plaintiff contends that Defendant Sutton and Does 1 through 150 all owed the following duties to Mr. Morris:

> a. To provide safe and appropriate CDCR custody at WASCO for JASON MORRIS, including reasonable classification, monitoring, and housing, and ensuring proper cell checks, supervision, and monitoring;
>
> b. To obey federal law, Supreme Court and Ninth Circuit precedent, and Court Orders for the care and safety of inmates, such as JASON MORRIS;
>
> d. (sic) To use generally accepted prison, custodial, institutional, law enforcement, and other inmate-safety-ensuring procedures that are reasonable and appropriate for Plaintiff's status and history as a CDCR inmate with mental health needs, and a history of in-cell altercations;
>
> e. To refrain from abusing their authority granted to them by law; and,
>
> g. (sic) To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

Compl. at ¶ 61. Defendants only seek dismissal of Plaintiff's claim as to Defendant Sutton. The Court agrees with Defendants' assessment that "the duty that would be most applicable to this case is the duty of care based on the special relationship that exists between a jailer and a prisoner." Doc. 6-1 at 15 n.9 (citing *Giraldo v. Dept. of Corrections & Rehabilitation*, 168 Cal.App.4th 231, 250 (Cal. Ct. App. 2008)); *accord Minneci v. Pollard*, 565 U.S. 118, 128 (2012) (explaining that the California law requiring a jailer to protect prisoners from an unreasonable risk of foreseeable physical harm is a specific application of general negligence principles). That duty encapsulates all of the proposed individual duties that Plaintiff identifies.

As previously noted, Plaintiff alleges that Defendant Sutton, as warden of Wasco, "was responsible for proper housing and classification" of inmates, "periodic cell checks" on inmates, "supervision of" inmates, "protection of" inmates, "promulgation of policies, procedures, and allowance of the practices and customs" of Wasco employees, and training of such employees. Compl at ¶ 4(b). Plaintiff asks the Court to find cognizable a claim that Defendant Sutton, and all of the other Defendants, failed to take reasonable care to protect Mr. Morris from danger by allowing Mr. Morris to be housed with a dangerous inmate despite Mr. Morris's expressed concerns and his offense of conviction which rendered him particularly susceptible to victimization. *See* Compl. at ¶¶ 16, 22. Unlike Plaintiff's section 1983 deliberate indifference claim, negligence can be found upon a

showing that Defendant Sutton *should have known* of the unreasonable danger to Plaintiff from improper classification and housing assignment. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiff alleges that Defendant Sutton was responsible for housing and classification of Mr. Morris; she alleges that Mr. Morris was improperly classified and housed, despite his protests and the risk caused by his offense of conviction; and she alleges that the improper classification and housing foreseeably led to Mr. Morris's death. At this stage, Plaintiff has alleged sufficient factual material to state a claim for direct negligence.[2]

E. Plaintiff's Sixth Cause of Action: Wrongful Death

Under California law, "'[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs.'" *Estate of Adomako v. City of Fremont*, 2018 WL 587146, *8 (N.D. Cal. Jan. 29, 2018) (quoting *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1263 (Cal. Ct. App. 2006)). Plaintiff's wrongful death claim survives against Defendant Sutton to the same extend that her negligence claim survives—insofar as Defendant Sutton had a direct obligation to ensure safe housing and classification of Mr. Morris yet took no action to do so, a claim is stated; insofar as Plaintiff's claim relies upon Defendant Sutton's knowledge of his subordinates' conduct and failure to train or control them, inadequate factual information is alleged. Plaintiff's wrongful death claim against Defendant Kernan is without factual support, as explained with respect to her supervisory liability claim against Defendant Kernan. Plaintiff fails to allege what policy Defendant Kernan created that resulted in Plaintiff's death. General allegations of the existence of a policy without identification of the specific policy at issue are inadequate. Plaintiff states a claim against Defendant Sutton as identified above. Defendant fails to state a claim against Defendant Kernan. The claim against Defendant Kernan will be dismissed with leave to amend.

///

---

[2] The Court does not agree with Plaintiff's suggestion that sufficient factual material has been alleged to infer that Defendant Sutton had knowledge of his subordinates' actions. However, that assertion is beside the point; Plaintiff alleges, and on its face CDCR regulations and California commonlaw support, an obligation on the part of Defendant Sutton to ensure that Mr. Morris was safely housed. Regardless of whether Defendant Sutton actually knew that Mr. Morris was improperly housed, he had an obligation to ensure that he was safely housed and took no steps to do so. Plaintiff states direct claim for negligence, not a claim for negligent supervision or control.

F. All Claims Against CDCR

The CDCR is a named defendant. Plaintiff's third (*Monell* claim) and sixth (wrongful death) causes of action are alleged against all defendants. As noted above, Plaintiff's *Monell* claim will be dismissed with prejudice as to the CDCR because the CDCR has Eleventh Amendment immunity. For the same reason, Plaintiff's wrongful death claim against the CDCR will be dismissed with prejudice. The CDCR will be dismissed from this action.

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss is GRANTED in part and DENIED in part as follows:
   a. Plaintiff's second cause of action is DISMISSED with leave to amend as to Defendants Kernan and Sutton;
   b. Plaintiff's third cause of action is DISMISSED with prejudice and without leave to amend as to all defendants;
   c. Plaintiff's fourth cause of action is DISMISSED with prejudice and without leave to amend as to Defendant Sutton;
   d. Plaintiff's fifth cause of action SURVIVES as to Defendant Sutton in the manner set forth herein;
   e. Plaintiff's sixth cause of action is DISMISSED with leave to amend as to Defendant Kernan, but SURVIVES as to Defendant Sutton;
   f. Plaintiff's claims against the CDCR are dismissed with prejudice and without leave to amend;
2. Defendant CDCR is dismissed from this action;
3. Any amended complaint must be filed within 30 days of the date of this order.

IT IS SO ORDERED.

Dated:  March 8, 2018

SENIOR DISTRICT JUDGE