# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MORRIS,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN SUTTON,<br><br>        Defendant. | Case No. 1:17-cv-01488-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT<br><br>(ECF No. 34)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.**

**INTRODUCTION**

Currently before the Court is Plaintiff Jennifer Morris' ("Plaintiff") motion to file an amended complaint, filed May 22, 2019, requesting leave to substitute D. Standiford, A. Ball, and D. Silva-Escobar as Doe Defendants 31, 32, and 33, as well as Doe Defendants 51, 52, and 53. (ECF No. 34.) Defendant John Sutton ("Defendant") filed an opposition on June 4, 2019. (ECF No. 36.) Plaintiff did not file any reply to Defendant's opposition. The Court found Plaintiff's motion for leave to amend suitable for decision without oral argument pursuant to Local Rule 230(g), and on 17, 2019, the Court issued an order vacating the scheduled hearing. (ECF No. 37.) Having considered the moving and opposition papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending that Plaintiff's motion for leave to file an amended complaint be denied.

///

# II.

# BACKGROUND

This action involves the murder of Jason Morris ("Morris") while he was incarcerated and awaiting formal classification by the California Department of Corrections and Rehabilitation ("CDCR") at Wasco State Prison. (Mot. Am. First Am. Compl. ("Mot.") 1, ECF No. 34.) Morris was a convicted sex offender placed in the Sensitive Needs Yard, and Plaintiff alleges that Morris specifically told CDCR officials that he needed a higher level of protection because of fears for his safety due to the nature of his offense. (Mot. 1-2.) On January 1, 2017, Morris was moved from a dorm setting into a cell. (Mot. 2.) Approximately ten days later, on February 1, 2017, an inmate named Michael Beardsley ("Beardsley" or "Inmate Beardsley") was placed in the cell with Morris. (Id.) Six days later, on February 7, 2017, Beardsley beat Morris and eventually strangled him to death. (Id.)

Plaintiff Jennifer Morris filed this action on November 3, 2017. (ECF No. 1.) On April 9, 2018, Plaintiff filed a first amended complaint, the operative complaint in this matter. (First Am. Compl. ("FAC"), ECF No. 15.) Plaintiff's FAC brings causes of actions for: (1) violation of civil rights under 42 U.S.C. § 1983; (2) violation of California Civil Code § 52.1(b); (3) negligence; and (4) wrongful death. (FAC 1.)

Defendant filed an answer on April 19, 2018. (ECF No. 17.) On August 15, 2018, the Court issued a scheduling order setting among others, the following deadlines: 1) motions to amend the pleadings to be filed by January 14, 2019; 2) non-expert discovery cutoff-off of March 29, 2019; 3) a dispositive motion deadline of June 28, 2019; and 4) a trial date of November 5, 2019. (ECF No. 23.) In the scheduling order, the Court also set a status conference to be held on February 14, 2019. (ECF No. 23.) On January 23, 2019, the Court ordered the parties to advise the Court of any issues that needed to be addressed at the February 14, 2019 status conference or advise the Court if the conference should be vacated or continued. (ECF No. 24.) On February 1, 2019, the parties submitted a joint response stating the parties had conferred regarding the need to hold a status conference and agreed that there were no issues that needed to be addressed by the Court, and requested the February 14, 2019 status conference be

1 vacated. (ECF No. 25.) On February 4, 2019, the Court vacated the February 14, 2019 status conference. (ECF No. 26.)

On April 10, 2019, Plaintiff filed a motion to reopen discovery and extend discovery deadlines in this matter. (ECF No. 28.) On May 13, 2019, the undersigned issued an order denying Plaintiff's motion to reopen discovery in this matter, and such order is currently pending review before the District Judge on Plaintiff's motion for reconsideration. (ECF Nos. 32, 33.) On May 22, 2019, Plaintiff filed the instant motion for leave to file an amended complaint which is the subject of this findings and recommendations. (ECF No. 34.)

## III.

## LEGAL STANDARD

Once a district court has entered a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 setting a deadline for amending pleadings, the district court is to first apply Rule 16's standard for amending the scheduling order if the deadline to amend has passed. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992); United States ex rel. Terry v. Wasatch Advantage Grp., LLC, 327 F.R.D. 395, 403 (E.D. Cal. 2018). If the party seeking amendment can satisfy the good cause standard of Rule 16(b), the district court then must determine whether the moving party has satisfied the requirements of Rule 15(a). Wasatch Advantage Grp., LLC, 327 F.R.D. at 403-04.

### A. The Rule 16(b) Good Cause Standard

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1)–(3). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of that order. Id. The prejudice to other parties, if any, may be considered, but the focus is on the moving party's

reason for seeking the modification. Id. If the party seeking to amend the scheduling order fails to show due diligence, the inquiry should end and the court should not grant the motion to modify. Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (citing Mammoth Recreations, 975 F.2d at 609). "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." Wasatch Advantage Grp., LLC, 327 F.R.D. at 404 (internal quotation marks and citation omitted) (alteration in original).

### B. The Rule 15 Standard for Amending Pleadings

If Plaintiff can meet the good cause standard to modify the scheduling order under Rule 16, Plaintiff must then satisfy the standards under Federal Rule of Civil Procedure 15(a). Wasatch Advantage Grp., LLC, 327 F.R.D. at 403-04. Twenty-one days after a responsive pleading or a motion to dismiss is filed, a party may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(1)-(2). "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). Leave to amend under Rule 15 is "within the sound discretion of the trial court," and "[i]n exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Amerisource Bergen Corp., 465 F.3d at 951 (citations omitted). Previous amendments may also be considered. See Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (listing "whether the plaintiff has previously amended his complaint" as a fifth factor); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (same). The factors are not weighed equally. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin,

59 F.3d at 845. Undue delay, "by itself . . . is insufficient to justify denying a motion to amend." Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quotation marks omitted) (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999)). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id. Here, Defendant does not consent to an amendment to the complaint. (ECF No. 36.)

## IV.

## ANALYSIS & DISCUSSION

The Court will first determine whether Plaintiff has demonstrated good cause pursuant to Rule 16 as the scheduling order was issued on August 15, 2018 (ECF No. 23), giving the parties until January 14, 2019 to file any motions to amend. See United States ex rel. Terry v. Wasatch Advantage Grp., LLC, 327 F.R.D. 395, 403 (E.D. Cal. 2018).

**A.      Plaintiff has not Demonstrated Good Cause to Modify the Scheduling Order**

On December 5, 2018, Plaintiff's counsel underwent a medical procedure and was out of the office for a large part of December and into January of 2019. (Mot. 3.) When counsel returned to the office, counsel was inundated with matters requiring immediate attention, particularly urgent criminal matters. (Id.) Plaintiff's counsel states that despite this heavy case load, discovery proceeded. (Id.) Plaintiff's deposition was held on January 29, 2019, and on February 15, 2019, Plaintiff served interrogatories and a request for production on Defendant Sutton. (Id.) Defendant responded to the discovery on March 19, 2019, and in response to an interrogatory asking to identify the officers who made the decision to house Inmate Beardsley with Morris, Defendant identified: D. Standiford, A. Ball, and D. Silva-Escobar (the "Doe Defendants"). (Id.) Upon reading this response, on March 20, 2019, Plaintiff's counsel noticed the depositions of the Doe Defendants for March 28, 2019. (Id.) Plaintiff states these depositions were thereafter canceled by Defendant's counsel, who now represents the Doe

Defendants."[1] (Id.)

Inmate Beardsley's state criminal trial ended on March 7, 2019, and he was sentenced on April 4, 2019, for Morris' murder. (Id.) Plaintiff has submitted a request to the state court to obtain the trial transcript along with other documents pertaining to the criminal case, such as the investigative file. (Id.) Plaintiff's counsel has been informed that the trial transcript will be ready no sooner than June 24, 2019. (Id. at 3-4.) Plaintiff emphasizes Inmate Beardsley has been unavailable to be deposed and pertinent records relating to the trial could not be obtained until after he was convicted. (Mot. 4.)

Plaintiff argues good cause exists to modify the scheduling order because the interrogatory responses identified the Doe Defendants as those responsible for housing Morris and Inmate Beardsley together, and revealed that D. Standiford approved the bed move that placed Inmate Beardsley into the cell with Morris, D. Silva-Escobar requested the bed move of Beardsley, and A. Ball reviewed the bed move. (Mot. 5.) Plaintiff argues Defendant's document production revealed that at the time of the cell transfer, prison officials knew Beardsley "was serving a fourteen year sentence for assault with a deadly weapon, was a gang-dropout, and had a history of aggression toward other inmates." (Id.) Plaintiff argues he has been diligent in creating a workable Rule 16 scheduling order and states that the need to amend the scheduling order "has occurred notwithstanding Plaintiff's diligent efforts to comply with it," and "[i]t was only once the totality of discovery was reviewed upon receipt of all discovery that Plaintiff's Counsel learned the details about Inmate Beardsley that were known to" the Doe Defendants. Mot. 5-6.) Plaintiff argues that "while some information was provided in initial disclosures, it took other discovery before Plaintiff determined that D. Standiford, A. Ball, and D. Silva-Escobar were the Doe Defendants described in the complaint." (Mot. 6.)

Plaintiff further argues she has not had the benefit of the full time allotted under the scheduling order to conduct discovery and ascertain the relevance of the documents provided in discovery because plaintiff counsel's "medical condition precluded conducting relevant

---

[1] In the previous motion to reopen discovery, Plaintiff states that after serving the notices of depositions on the Doe Defendants, Defendant's counsel cancelled the depositions objecting because of insufficient notice, because there were no witness fees, and because the distance to the deposition location. (ECF No. 28 at 11.)

6

discovery and amending the complaint in compliance with the scheduling order." (Mot. 6.) Plaintiff also argues that she has been diligent in seeking to amend the scheduling order once it became apparent who the Doe Defendants were, noting Defendant Sutton only responded to discovery on March 19, 2019, and states "[l]ess than a month has passed since Plaintiff determined" who the Doe Defendants were, and such a short delay has been found diligent by other courts.[2] (Mot. 6.) Lastly, Plaintiff argues that she is not belatedly seeking to amend to add a new theory after dispositive motions have been filed.

In response, Defendant emphasizes that Plaintiff was not diligent because Plaintiff knew the identities and involvement of the Doe Defendants she now seeks to add months before the deadline to file a motion to amend the pleadings, and did not file such motion until May 22, 2019. (Def.'s Opp'n Pl.'s Mot. Am. ("Opp'n") 4, ECF No. 36.) Defendant argues Plaintiff's suggestion that she did not have sufficient facts to determine whether the conduct of the Doe Defendants contributed to Morris' death is contradicted by the allegations of the first amended complaint, as she is merely attempting to substitute them in place of the sued Does, and once she received the names in the initial disclosures, Plaintiff could have and should have immediately moved to amend. (Opp'n 4.) Thus, Defendant argues it was not necessary to complete discovery before substituting the Doe Defendants, and even if it was, Plaintiff was not diligent as demonstrated by the fact that Plaintiff did not commence serving written discovery until February 15, 2019, a date after the deadline to file motions to amend the pleadings. (Opp'n 4-5.)

The primary consideration in determining good cause to modify the scheduling order is the diligence of the party seeking the modification. In determining diligence, the Court can look at "whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." Wasatch Advantage Grp., LLC, 327

---

[2] It is not clear if Plaintiff is referring to the date she originally filed her motion to reopen discovery as the date that is less than one month after Defendant served the discovery responses, as Plaintiff's motion to amend the complaint was not filed until May 22, 2019, two months after the discovery responses, not one. (ECF No. 34.) Plaintiff's motion to reopen discovery was filed less than one month after the discovery responses, on April 10, 2019. (ECF No. 28.)

7

F.R.D. at 404 (internal quotation marks and citation omitted) (alteration in original).

First, it is not clear Plaintiff was diligent in helping the court create a workable scheduling order. In briefing, Plaintiff emphasizes the need for obtaining the transcript and records from Inmate Beardsley's state criminal trial, however the need to obtain such information is something Plaintiff should have foresaw as potentially impacting the deadlines in the scheduling order at the time of the initial scheduling conference. Additionally, the need to obtain information necessary to determine the identity of the Doe Defendants in sufficient time to amend the pleadings prior to the deadline for amending pleadings was foreseeable at the time of the scheduling conference. Nonetheless, the Court will assume Plaintiff was at least diligent in crafting the initial scheduling deadlines given the Court cannot conclude, based on the record, how foreseeable these issues were at that time, in addition to consideration of Plaintiff's counsel's medical condition in December of 2018.

Nonetheless, however diligent Plaintiff may have been in creating a workable scheduling order is completely overshadowed by the lack of diligence exhibited in pursuing discovery, if in fact it was needed to amend the pleadings,[3] and in the lack of diligence working with the Court and opposing party to amend the scheduling order at the earliest possible date when the need for amendment became apparent. While the Court is sympathetic to the medical issues and other pressing criminal matters that prevented Plaintiff's counsel from focusing attention on this matter in December of 2018 and January of 2019, Plaintiff failed to issue basic written discovery until February 15, 2019, nearly six months after the scheduling order was issued, and fully one month after the January 14, 2019 deadline to file a motion to amend the pleadings. While Plaintiff's counsel's medical issues occurred in December of 2018, Plaintiff makes no indication that any discovery was conducted between the time of the initial scheduling order and December of 2018.

Even if Plaintiff was diligent in pursuing discovery and was prevented in doing so by events completely unforeseeable, Plaintiff was not diligent in seeking amendment once the need

---

[3] It appears written discovery was not even necessary to ascertain the information needed to amend the pleadings given the information disclosed in Defendant's initial disclosures as discussed below. Thus it is not clear that it was in fact even necessary to complete discovery in order to comply with the scheduling order's deadline to amend the pleadings, in addition to the failure to exercise diligence in working with the Court to modify the deadline to amend the pleadings when the deadline passed.

8

allegedly became apparent to Plaintiff. The need to amend the scheduling order to extend the time to allow for amending the pleadings should have been readily apparent prior to the January 14, 2019 deadline, or anytime thereafter, yet the earliest that Plaintiff brought the need to reopen discovery to the Court's attention was April 10, 2019, after the deadline for completing discovery had passed, nearly a month after Plaintiff received Defendant's discovery responses. Further, Plaintiff did not move to amend the pleadings until May 22, 2019, two months after receiving the discovery responses, and four months after the deadline to amend the pleadings had expired. This failure is highlighted by the fact that on January 23, 2019, a date after the deadline to amend the pleadings, the Court ordered the parties to advise the Court of any issues that needed to be addressed at the scheduled February 14, 2019 status conference or advise the Court if the conference should be vacated or continued. (ECF No. 24.) On February 1, 2019, the parties submitted a joint response stating the parties had conferred regarding the need to hold a status conference and agreed that there were no issues that needed to be addressed by the Court, and requested the February 14, 2019 status conference be vacated. (ECF No. 25.) On February 4, 2019, the Court vacated the February 14, 2019 status conference. (ECF No. 26.) Again, Plaintiff did not file written discovery until February 15, 2019, six months after the scheduling order issued, a month after the deadline to file a motion to amend the pleadings, and the day after the status conference was set to occur but which the parties had requested to be vacated two weeks before indicating there were no issues that needed to be addressed by the Court. The Court cannot fathom how to interpret these facts as demonstrating diligence given the apparent need to find out the identities of the Doe Defendants and substitute them into an amended complaint existed at this point, and the Court would recommend denying Plaintiff's motion for this reason. See Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (stating that if the party seeking to amend the scheduling order fails to show due diligence the inquiry should end and the court should not grant the motion to modify) (citing Mammoth Recreations, 975 F.2d at 609).

Of the most significance to the instant motion, the information Plaintiff contends was not revealed until March of 2019 was in fact largely or completely disclosed in the initial disclosures

9

in September of 2018. Again, Plaintiff claims that Defendant's March 2019 interrogatory responses revealed that D. Standiford approved the bed move that placed Inmate Beardsley into the cell with Morris, that D. Silva-Escobar requested the bed move of Beardsley, and that A. Ball reviewed the bed move. (Mot. 5.) On September 28, 2018, Defendant served initial disclosures along with 267 pages of documents on Plaintiff. (Decl. of Joseph R. Wheeler ("Wheeler Decl.") ¶ 2, ECF No. 36-1.) In the initial disclosures, D. Standiford is described as "the Correctional Sergeant in Central Control at Wasco State Prison who approved the bed move request that placed Jason Morris in cell 112 in Building B3 on January 21, 2017," and as "the individual who approved the bed move requested that placed Michael Beardsley in cell 112 in Building B3 on February 1, 2017." (Wheeler Decl., Ex. A, ECF No. 36-1 at 5.) A. Ball is described as "the Correctional Sergeant at Wasco State Prison who reviewed the bed move request that placed Michael Beardsley in cell 112 in Building B3 on February 1, 2017." (Id.) D. Sivla-Escobar is described as "the Correction Officer at Wasco State Prison who requested the bed move that placed Michael Beardsley in cell 112 in Building B3 on February 1, 2017." (Id.) This is the precisely the same information that Plaintiff claims was only "revealed" in March of 2019 when she received Defendant's written discovery responses.

In Plaintiff's first amended complaint, Doe Defendants 31-50 were identified as those "responsible for the proper housing and classification of Wasco inmates, including MORRIS and the Wasco inmate and cellmate of MORRIS that murdered him, and made the decision to house these inmates together; these to-be-identified Defendants were responsible for the safety of Wasco inmates, the supervision of inmates, and in general, the protection of Wasco inmates from violence and/or murder." (FAC 6.) Doe Defendants 51-70 were "responsible for the proper housing and classification of Wasco inmates, including MORRIS and the Wasco inmate and cellmate of MORRIS that murdered him, and made the decision to place MORRIS in a cell with a violent inmate on Double Cell status (meaning he could be housed with another inmate)." (Id.) Based on the information contained in the initial disclosures in relation to the description of the Doe Defendants 31-70 in the first amended complaint and in relation to the information that Plaintiff claims was necessary for amendment and only revealed in March of 2019, the Court

cannot discern any reason why Plaintiff would not have been able to substitute the Doe Defendants upon receipt of the initial disclosures in September of 2018.

The Court notes that Plaintiff argues Defendant's March 2019 document production also revealed that at the time of the cell transfer, prison officials knew Beardsley "was serving a fourteen year sentence for assault with a deadly weapon, was a gang-dropout, and had a history of aggression toward other inmates." (Id.) The Court has reviewed the relevant documents produced to Plaintiff in September of 2018. (Wheeler Decl., Ex. B, ECF No. 36-1 at 9-14.) These documents include information about Inmate Beardsley's commitment for fourteen years for assault with a deadly weapon, notes a history of aggression based on a battery of an inmate in May of 2011 and another fight, notes an affiliation or danger associated with a gang identified as "HISP D/O SOUTHSIDER," and lists the inmate's prior arrest history. (Id.) Thus, the information contained in the initial disclosures had largely or entirely revealed this information to Plaintiff in September of 2018. The Court further notes that the first amended complaint it states Morris "was housed in a double cell with a violent offender that was serving a 14-year sentence for assault with a deadly weapon." (FAC 2.) The first amended complaint also states "[i]t is believed that MORRIS' cellmate was known by Defendants to be aggressive and violent based on his criminal history, including the assault with a deadly weapon charge for which he was incarcerated." (FAC 2.)

Finally, while lack of diligence is the primary consideration and can be solely determinative on a motion to modify the scheduling order, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). The Court finds prejudice against Defendant Sutton provides an additional reason in favor of denying Plaintiff's motion, as Defendant Sutton, proceeding as the only named Defendant in this matter since July of 2018, has completed discovery, the dispositive motion deadline is June 28, 2019, and the trial date is set for November 5, 2019. See Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) ("The requirement of additional discovery would have prejudiced Edison and delayed the proceedings."); Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986

1  (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a
2  district court's finding of prejudice from a delayed motion to amend the complaint.").

3  For all of the above reasons, the Court finds Plaintiff has not demonstrated the good
4  cause necessary to allow modification of the scheduling order. The Court thus recommends that
5  Plaintiff's motion to amend be denied as untimely under the deadline established for amending
6  pleadings in the scheduling order, as "to allow a modification of the scheduling order without
7  good cause would render scheduling orders essentially meaningless, and directly interfere with
8  the courts' attempts to manage their dockets and with the standard course of litigation in actions
9  such as this." Thomas v. California Dep't of Corr. & Rehab., No. 1:07-CV-01165-AWI, 2011
10 WL 204732, at *1 (E.D. Cal. Jan. 7, 2011) (citing Johnson v. Mammoth Recreations, Inc., 975
11 F.2d 604, 610 (9th Cir. 1992)).

12 Having found an absence of good cause to amend the scheduling order under Rule 16, the
13 Court is not required to proceed to the question of whether Plaintiff has met the standard for
14 amending pleadings under Rule 15, and the undersigned would recommend denying Plaintiff's
15 motion to amend the pleadings on this ground. See Johnson, 975 F.2d at 608 (stating that after
16 expiration of deadline to amend pleadings plaintiff must show good cause under Rule 16(b) first,
17 and then if good cause is shown must demonstrate amendment is proper under Rule 15).
18 However, the Court will nonetheless proceed to determine whether, assuming arguendo that
19 Plaintiff had met the good cause standard for modification of the scheduling order, whether she
20 could also meet the standard under Rule 15 for leave to amend.

21 **B.     Plaintiff Fails to Meet the Rule 15 Requirements for Leave to Amend**

22 The Court now turns to the question of whether, assuming arguendo Plaintiff had in fact
23 met the good cause standard under Rule 16 to modify the scheduling order, whether she could
24 then meet the requirements for amendment under Rule 15. Courts "need not grant leave to
25 amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3)
26 produces an undue delay in the litigation; or (4) is futile." Amerisource Bergen Corp. v. Dialysis
27 West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

28

1.  Prejudice

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

Plaintiff argues there is no prejudice to Defendant Sutton because he has no interest in whether Plaintiff pursues claims against the other Doe Defendants. (Mot. 8.) Plaintiff further argues that to the extent the Doe Defendants object, they bear the burden of demonstrating prejudice, and argue the delay in naming the Doe Defendants has been explained in the motion, and this "is not a case where Plaintiff waited a significant amount of time to move to amend once Plaintiff determined" the identities of the Doe Defendants, and thus prejudice is limited. (Mot. 8.) Defendant argues that the Doe Defendants are prejudiced because discovery has closed, they will not be able to properly prepare for trial or file dispositive motions prior to the deadline of June 28, 2019, and because of stale evidence. (Opp'n 9.) Defendant Sutton argues he will suffer prejudice because he would be forced to continue litigation for many more months. (Id.)

It is not clear whether it is proper to consider the prejudice to the yet to be added Doe Defendants under this specific factor, described as prejudice to the opposing party. See Eminence Capital, 316 F.3d at 1052. The Court need not make such determination and finds prejudice exists to Defendant Sutton. "In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Malone v. U.S. Postal Serv., 833 F.2d 128, 131 (9th Cir. 1987). "One indicator of prejudice includes the need to reopen discovery." Hunting v. Xium Corp., No. 1:10-CV-01844 AWI, 2012 WL 913733, at *3 (E.D. Cal. Mar. 16, 2012) (citing In re Fritz Cos. Secs. Litig., 282 F.Supp.2d 1105, 1109 (N.D.Cal.2003)). "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986 (9th Cir. 1999) (noting the "motion to amend came several months after the stipulated deadline for amending," and "[n]othing in the proposed amended complaint

relied on facts that were unavailable before the stipulated deadline."). "Prejudice is heightened when a Plaintiff seeks to amend a complaint late in litigation." Netbula, LLC v. Bindview Dev. Corp., No. C06 00711 MJJ, 2007 WL 2221070, at *4 (N.D. Cal. Aug. 2, 2007) (citing Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) ("Mobil would suffer prejudice if Ascon were allowed to amend its complaint at this late date. Mobil has already incurred substantial litigation costs, which a more careful reading of RCRA by Ascon would have avoided. To put Mobil 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery,' would cause undue prejudice.") (internal citations omitted)).

It is true that "[l]imited delays and the prejudice to a defendant from the pendency of a lawsuit are realities of the system that have to be accepted, provided the prejudice is not compounded by 'unreasonable' delays." Yourish v. California Amplifier, 191 F.3d 983, 991 (9th Cir. 1999) (quoting Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir. 1984)). As the Court finds in the following section, Plaintiff's proposed amendment has been unreasonably delayed and would cause further undue delay, a factor which compounds the prejudice to Defendant. Such confluence of undue delay and prejudice to the Defendant is further highlighted by the fact that on June 26, 2019, Defendant filed a motion for summary judgment pursuant to the dispositive motion deadline of June 28, 2019. (ECF No. 38.)

2. Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990). Here, Plaintiff filed her first amended complaint on April 9, 2018. (ECF No. 15.) Defendant served initial disclosures on September 28, 2018, which as the Court found above, provided the information necessary to name the Doe Defendants. Thus, even though not known at the time of the filing of the operative complaint, such information was known well in advance of the deadline established for filing a motion to amend the pleadings, and weighs toward finding undue delay on the part of Plaintiff. See Jones v. Cty. of Tulare, California, No. 1:17-CV-1260-SKO, 2018 WL 6271577, at *6 (E.D. Cal. Nov.

1  30, 2018) (noting that while five of the six incidents plaintiffs sought to add to an amended
2  complaint occurred after the filing of the complaint, they occurred before the court's scheduling
3  conference where plaintiffs "represented that no amendments to the complaint were anticipated
4  despite full knowledge of all these incidents.")

5　　　　For all of the reasons explained supra Section IV(A), the Court found Plaintiff was not
6  diligent in pursuing amendment of the scheduling order, failed to file a motion for leave to file an
7  amended complaint when Plaintiff was aware of the information necessary to do so as early as
8  September of 2018, and also failed to work with the Court as soon as Plaintiff became aware or
9  should have been aware of the need to amend the scheduling order to allow for her to file such
10 motion for leave after the expiration of the deadline to do so established in the scheduling order.
11 The Court finds substantial undue delay on the part of Plaintiff here.  Undue delay, "by itself . . .
12 is insufficient to justify denying a motion to amend."  Owens v. Kaiser Foundation Health Plan,
13 Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quotation marks omitted) (quoting Bowles v. Reade, 198
14 F.3d 752, 757-58 (9th Cir. 1999)).  However, "Plaintiff's undue delay in seeking amendment
15 would result in unfair prejudice to Defendant[] at this late stage in the litigation."  Netbula, LLC
16 v. Bindview Dev. Corp., No. C06 00711 MJJ, 2007 WL 2221070, at *4 (N.D. Cal. Aug. 2,
17 2007); see also Yourish v. California Amplifier, 191 F.3d 983, 991 (9th Cir. 1999); Acosta-
18 Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998).

19　　　　Assuming arguendo that Plaintiff had met the good cause standard for amending the
20 scheduling order under Rule 16, prejudice and undue delay taken together justify denying
21 Plaintiff's motion for leave to amend under Rule 15, and the Court recommends denying
22 Plaintiff's motion on this additional ground.[4]

---

[4] Based on the parties' briefing, the Court cannot clearly find that amendment would be futile under the relation back doctrine applicable to the addition of doe defendants under California and federal law. See Provencio v. Vazquez, 258 F.R.D. 626, 632 (E.D. Cal. 2009) ("Although *Merritt* and *Cabrales* do not specifically reference section 583.210, it is clear from the context, underlying opinions and subsequent cases that section 583.210 is the statute that in combination with section 474 has been found to allow plaintiffs suing fictitious defendants in federal court under 42 U.S.C.1983 three years to serve a 'Doe' defendant upon ascertaining their identity."); A.N. v. Cty. of Los Angeles, 171 Cal. App. 4th 1058, 1066-68, as modified on denial of reh'g (Apr. 6, 2009) (finding that "section 474 includes an implicit requirement that a plaintiff may not "unreasonably delay" his or her filing of a Doe amendment after learning a defendant's identity," that a "defendant named in an action by a Doe amendment under section 474 may challenge the amendment by way of an evidence-based motion, which argues that the plaintiff 'unreasonable delayed' his or her filing of the challenged amendment," and " 'unreasonable delay' within the

15

# V.

# CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's motion for leave to file an amended complaint (ECF No. 34) be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __June 28, 2019__

UNITED STATES MAGISTRATE JUDGE

---

meaning of '*Barrows*' includes a prejudice element, which requires a showing by the defendant that he or she would suffer prejudice from plaintiff's delay in filing the Doe amendment."). The Court also finds no evidence of bad faith on behalf of Plaintiff, however, Plaintiff's focus on arguing diligence in this section of the briefing is not convincing, for all the reasons the Court discussed above regarding the Plaintiff's lack of diligence. (See Mot. 9.)