# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JENNIFER MORRIS,** | **CASE NO. 1:17-cv-01488-AWI-SAB** |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT SUTTON'S RULE 60(b)(6) MOTION** |
| **JOHN SUTTON,** | (Doc. Nos. 50, 54) |
| Defendant. | |

## I. Background

Jason Morris (hereinafter "Jason") was a convicted sex offender. While Jason was imprisoned in California's Wasco State Prison, prison officials placed Jason in a "double" prison cell with a cellmate who had a violent, non-sexual criminal history. By double-celling Jason with a violent prisoner, the prison allegedly placed Jason in harm's way and contravened reasonable prison policies, which aim to prevent sex offenders from being double-celled with prisoners who have violent, non-sexual criminal histories. On February 7, 2017, Jason was strangled to death by his cellmate.

Based on these allegations, Plaintiff Jennifer Morris (hereinafter "Morris"), who was Jason's wife, sued the following defendants: (1) California Department of Corrections and Rehabilitation ("CDCR"); (2) the secretary of CDCR, Scott Kernan; (3) the warden of California's Wasco State Prison, John Sutton; and (4) multiple unnamed "Doe" defendants.

In Morris's original complaint, which was filed on November 3, 2017, Morris pleaded the following causes of action: (1) a 42 U.S.C. § 1983 claim against all defendants for depriving Jason and Morris of their constitutional rights; (2) a California Bane Act claim under California Civil Code § 52.1 against Sutton and the Doe defendants for depriving Jason and Morris of their rights under federal and California law; (3) a negligence claim against Sutton and the Doe defendants for allowing Jason to be killed in prison; and (4) a wrongful death claim against all defendants based on Morris's damages caused by Jason's death.

The parties engaged in Rule 12(b)(6) motion practice, which led the Court on March 8, 2018, to dismiss with prejudice all of Morris's claims against CDCR and Kernan. Thereafter, Morris filed her first amended complaint on April 9, 2018, pleading the following amended causes of action: (1) a 42 U.S.C. § 1983 claim against only the Doe defendants; (2) a California Bane Act claim against only the Doe defendants; (3) a negligence claim against Sutton and the Doe defendants; and (4) a wrongful death claim against only Sutton and the Doe defendants.

The Court then issued a scheduling order on August 15, 2018, and the scheduling order imposed the following deadlines and dates on the parties:

- January 14, 2018, for lodging motions for leave to amend the pleadings;
- March 29, 2019, for completion of non-expert discovery;
- June 28, 2019, for lodging dispositive motions;
- November 5, 2019, for the start of trial.

Doc. 23 (Court's scheduling order).

The deadline to amend the pleadings and the discovery deadline eventually expired, and by that time, Morris failed to amend her complaint to identify and name any of the unnamed Doe defendants. For that reason, the Court concluded that Morris's § 1983 claim was facially implausible. Stated the Court,

> [T]he § 1983 claim is not pleaded against any named defendants. This makes the claim facially implausible at this post-discovery and post-amendment phase. The shelf-life of Plaintiff's Doe designations has expired: the designations were permitted as a placeholder for named defendants only during the discovery phase, not at trial.

Doc. No. 49 (citations omitted). On that basis, the Court dismissed with prejudice Morris's § 1983 claim on September 6, 2019. See id.

Up until that time, the Court's subject matter jurisdiction in this lawsuit was premised on, first, federal question jurisdiction over the § 1983 claim pursuant to 28 U.S.C. § 1331 and, second, supplemental jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1367(a). Consequently, when the Court dismissed the § 1983 claim on September 6, 2019 — which was approximately two months before the scheduled trial date, November 5, 2019 — the Court no

2

longer had federal question jurisdiction over this lawsuit: the only remaining claims were California state law claims. With the Court no longer exercising federal question jurisdiction over this lawsuit at a time when the scheduled trial date was months into the future and the Court had not adjudicated any summary judgment motions,[1] the Court exercised its discretion under 28 U.S.C. § 1367(c) to discontinue exercising supplemental jurisdiction over the state law claims, which the Court dismissed without prejudice.

The Court's dismissal decision was guided by the authorization and instruction from Congress, the Supreme Court, and the Ninth Circuit in, respectively, 28 U.S.C. 1367(c)(2)-(3), United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), and Acri v. Varian Assocs., Inc., 114 F.3d 999 (9th Cir. 1997). Those authorities collectively hold that a federal district court exercising supplemental jurisdiction over state law claims should relinquish its supplemental jurisdiction and dismiss without prejudice the state law claims if, first, the district court dismisses all federal law claims before trial and, second, the dismissal of the state law claims will comport with the values of economy, convenience, fairness, and comity.

Sutton was displeased with the Court's dismissal decision. He wanted Morris's state law claims against him to be adjudicated in this federal forum, either by way of summary judgment or trial. Consequently, pursuant to Rule 60(b)(6), Sutton moved the Court to reconsider and reverse its dismissal decision. See Doc. No. 50-1 (Sutton's Rule 60(b)(6) motion brief).

After Sutton filed his Rule 60(b)(6) motion, Morris filed a lawsuit in California state court against Sutton and other defendants based on virtually the same allegations that Morris alleged in this federal lawsuit.[2]

## II. Sutton's Rule 60(b)(6) Motion

Sutton argues that there are "extraordinary circumstances" under Rule 60(b)(6) that require the Court to reverse its dismissal decision and resume exercising supplemental jurisdiction over

---

[1] Sutton asserts that the Court's dismissal decision of September 6, 2019, was made "on the eve of trial." Sutton's "eve of trial" characterization is, put charitably, exaggerated. When the Court issued its dismissal decision, the scheduled trial date was still sixty days away, the pretrial conference had yet to occur, and motions in limine and trial briefs had not yet been filed.

[2] Sutton apprised the Court of Morris's state court lawsuit by filing with the Court copies of Morris's state court complaint and an amendment to that complaint. See Doc. No. 54. Sutton requested that the Court take judicial notice of those state court filings. Id. Sutton's request for judicial notice will be granted. See Fed. R. Evid. 201.

Morris's state law claims. The following circumstances, according to Sutton, collectively amount to "extraordinary circumstances" under Rule 60(b)(6).

First, by the time the Court issued its dismissal decision on September 6, 2019, the state law claims had been "extensively" litigated in this forum. Doc. No. 50-1 at 7. The parties had conducted discovery, and Sutton had prepared and filed a summary judgment motion which was pending when the Court issued its dismissal decision, and trial was just two months away.

Second, by the time the Court issued is dismissal decision, Sutton "by way of the State and its taxpayers" had spent over $75,000 in legal fees and costs in this lawsuit.[3] Those funds will be effectively "wasted" if Sutton is required to "re"-defend himself "from the beginning" in Morris's California state court lawsuit. Doc. No. 50-1 at 6-7.

Third, Morris will receive a "windfall" if she is permitted to adjudicate her state law claims in the California state court lawsuit. By "windfall," Sutton means the following three events will occur: (1) Morris will be able to name additional defendants in the state court lawsuit that Morris failed to timely name in this federal lawsuit; (2) Morris will be able to conduct additional depositions in the state court lawsuit that Morris failed to timely conduct during the discovery phase in this federal lawsuit; and (3) Morris will be able to re-depose Sutton in the state court lawsuit even though she deposed Sutton in this federal lawsuit.

Fourth, Morris's remaining state law claims are neither novel nor complex, so comity does not weigh heavily in favor of this Court relinquishing its supplemental jurisdiction in favor of the California state courts.

## III. Legal Standard for Rule 60(b)(6)

Rule 60(b)(6) states that "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." Rule 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice." Greenawalt v. Stewart, 105 F.3d 1268, 1273 (9th Cir. 1997). To receive relief under Rule 60(b)(6), the movant must demonstrate "extraordinary circumstances" that, absent the

---

[3] Throughout this lawsuit, including through the filing of the instant Rule 60(b)(6) motion, Sutton has been represented by the Attorney General of the State of California.

4

Court's relief, will result in "manifest injustice." Riley v. Filson, 933 F.3d 1068, 1071 (9th Cir. 2019) (emphasis added); see also Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993) (characterizing "extraordinary circumstances" for purposes of Rule 60(b)(6) as those that result in an "extreme and unexpected hardship") (emphasis added). Because extraordinary circumstances under Rule 60(b)(6) are rare, "judgments are not often set aside under Rule 60(b)(6)." In re Int'l Fibercom, Inc., 503 F.3d 933, 941 (9th Cir. 2007) (citation omitted).

## IV. Discussion

Sutton has not demonstrated "extraordinary circumstances" that warrant relief under Rule 60(b)(6). This is because the Court's decision to relinquish its supplemental jurisdiction of Morris's state law claims — which was not an abuse of discretion — does not amount to "manifest injustice" or an "extreme and unexpected hardship" to Sutton.

**A. The Court did not abuse its discretion by relinquishing its supplemental jurisdiction over Morris's state law claims.**

The Court's decision to relinquish its supplemental jurisdiction was sound. As noted supra, the Court's decision was guided by the authorization and instruction from Congress, the Supreme Court, and the Ninth Circuit in, respectively, 28 U.S.C. 1367(c)(2)-(3), United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), and Acri v. Varian Assocs., Inc., 114 F.3d 999 (9th Cir. 1997).

Section 1367(c)(3) authorizes federal district courts to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Additionally, § 1367(c)(2) authorizes federal district courts to decline to exercise supplemental jurisdiction when a state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." Here the Court was faced with both of those situations when Morris's § 1983 claim was dismissed: all federal claims had been dismissed before trial, and as a result the remaining state law claims inescapably and substantially predominated over any federal law claims, of which there were none. Therefore, the Court was authorized by Congress to relinquish its supplemental jurisdiction over Morris's state law claims.

5

While § 1367(c) authorizes a federal district court to relinquish its supplemental jurisdiction, the Ninth Circuit in Acri instructed federal district courts that their decision to relinquish supplemental jurisdiction must be based on more than just the authorization in § 1367(c). In addition to the authorization in § 1367(c), a federal district court's decision to relinquish its supplemental jurisdiction must also be "informed by the Gibbs values of economy, convenience, fairness, and comity." Acri, 114 F.3d at 1001. In conjunction with issuing this instruction in Acri, the Ninth Circuit quoted the Supreme Court, which stated in Carnegie-Mellon Univ. v. Cohill that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) (emphasis added) (quoted by Acri, 114 F.3d at 1001). [4]

The Ninth Circuit's reference to the "Gibbs values" comes from the Supreme Court's opinion in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966). There the Supreme Court stated that a federal district court "should hesitate" to exercise supplemental jurisdiction over state law claims if "considerations of judicial economy, convenience and fairness . . . are not present." Id. at 726. The Supreme Court also stated in Gibbs that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. In Gibbs the Supreme Court also laid the groundwork for what is now § 1367(c)(2)-(3), stating that, first, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"; and, second, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." Id. at 726-27 (emphasis added); cf. 28 U.S.C. § 1367(c)(2)-(3). These statements in Gibbs and Congress's codification of those statements in § 1367(c)(2)-(3) clearly contemplate and approve of certain situations wherein state law claims are maintained for a

---

[4] Acri is also significant because there the Ninth Circuit clarified that that although "state law claims 'should' be dismissed if federal claims are dismissed before trial, as Gibbs instructs, [Gibbs] has never meant that [state law claims] must be dismissed." Acri, 114 F.3d at 1000 (emphasis added).

6

time in federal court pursuant to "pendent" or supplemental jurisdiction but then, at some point prior to trial, dismissed without prejudice because the federal court no longer has original jurisdiction over the federal law claims. And when the Supreme Court and Congress contemplated state law claims being maintained for a time in federal court prior to dismissal, their contemplation must have envisioned the state law claims being subjected to discovery, Rule 12(b) motion practice, and conceivably even unsuccessful summary judgment motion practice.

Here, in conjunction with dismissing Morris's § 1983 claim, the Court correctly concluded that authorization existed under § 1367(c)(2)-(3) to relinquish supplemental jurisdiction over Morris's state law claims. With that statutory authorization having been "triggered," see Acri, 114 F.3d at 1001 ("[D]iscretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c) . . . ."), the Court then considered and weighed the Gibbs values, as follows.

On the one hand, considerations of Sutton's convenience weighed in favor of the Court maintaining its supplemental jurisdiction over the state law claims. This was because Sutton had engaged in discovery and prepared and filed a summary judgment motion in this federal lawsuit, and Sutton had expended time, attention, and legal fees and costs to defend himself in this federal lawsuit — although that can be said of most earnest defendants.

But on the other hand, judicial economy, fairness, and comity weighed in favor of this Court relinquishing its supplemental jurisdiction. As for judicial economy, the District Court Judge was not intimately familiar with the merits of Morris's state law claims and Sutton's defenses, having been exposed to the elemental substance of the claims only at the Rule 12(b)(6) phase.[5] Accordingly, there was no significant waste of this Court's judicial resources by dismissing without prejudice the state law claims.[6]

---

[5] While it is true that the Magistrate Judge was involved with some discovery issues and pleading-amendment issues in this lawsuit, it is the District Court Judge, not the Magistrate Judge, who would handle summary judgment and trial.

[6] Inversely, if the Court had elected to maintain its supplemental jurisdiction over the state law claims, then the Court would be required to expend the immense judicial resources that are necessary to adjudicate summary judgment motions and / or a jury trial. It is no secret that the Eastern District of California has one of the heaviest caseloads in the Ninth Circuit and the nation, insofar as weighted filings per authorized judgeship are concerned. See U.S. COURTS, U.S. DISTRICT COURTS — WEIGHTED AND UNWEIGHTED FILINGS PER AUTHORIZED JUDGESHIP — DURING THE 12-MONTH PERIODS ENDING SEPTEMBER 30, 2016 AND 2017, Publication Table Number: X-1A, https://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2017.pdf.

As for fairness, there was no indication that Sutton would be treated unfairly if he were to defend himself in a California state court lawsuit. The fact that Morris could add additional defendants in a state court lawsuit does not demonstrate unfairness towards Sutton. Additionally, the fact that Sutton's summary judgment motion was pending when the Court dismissed this federal lawsuit does not demonstrate unfairness towards Sutton. For one, while the Court did not decide the merits of Sutton's summary judgment motion, the Court was aware that Sutton's summary judgment motion failed to comply with the Court's procedures for summary judgment motions, see Doc. No. 23 (Court's scheduling order requiring Sutton to both (1) meet-and-confer with Morris prior to filing a summary judgment motion and (2) file a joint statement of undisputed facts with the summary judgment motion), and on that basis alone the Court could have denied Sutton's summary judgment motion. For another, whatever merit existed in Sutton's summary judgment motion will likely continue to exist in Morris's state court lawsuit, and Sutton has failed to demonstrate otherwise. Additionally, the fact that Sutton may have to engage in some redundant discovery in a state court lawsuit does not demonstrate unfairness towards Sutton. It is a simple reality — one that Congress, the Supreme Court, and Ninth Circuit are surely aware of — that there will oftentimes be redundancy of discovery and other litigation procedures when a state law claim is dismissed pursuant to § 1367(c)(2)-(3) and renewed in a subsequent state court lawsuit. Further, the idea proposed by Sutton that he will have to start from "scratch" in a subsequent state court lawsuit is a fiction: much of Sutton's strategy and discovery from this federal lawsuit can be "recycled" and relied upon in any subsequent state court lawsuit filed by Morris. For all these reasons, Gibbs' fairness consideration did not weigh in favor of the Court maintaining its supplemental jurisdiction over Morris's state law claims.

As for comity, this consideration weighed strongly in favor of relinquishing supplemental jurisdiction. This is because the California state courts have the primary responsibility for developing and applying their state law claims, including Morris's Bane Act, negligence, and wrongful death claims. Sutton's "neither novel nor complex" contention fails to rattle that conclusion. While it may be true that Morris's state law claims are neither novel nor complex, Sutton's contention hearkens to § 1367(c)(1), which states that a federal district court "may

1  decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or
2  complex issue of State law." The problem for Sutton, of course, is that the Court never premised
3  its dismissal decision on § 1367(c)(1).

**B.      Rule 60(b)(6) relief is not warranted because there are no extraordinary circumstances that will result in manifest injustice.**

Assuming arguendo that the Court abused its discretion by relinquishing its supplemental jurisdiction over Morris's state law claims, relief under Rule 60(b)(6) is still not warranted. This is because there are no extraordinary circumstances that will result in manifest injustice to Sutton.

As noted supra, extraordinary circumstances under Rule 60(b)(6) are rare. The following six examples are situations where extraordinary circumstances existed and warranted judicial relief under Rule 60(b)(6). First, Rule 60(b)(6) relief was appropriate to set aside a default judgment in a denaturalization proceeding because the petitioner had been ill, incarcerated, and without counsel for the four years following the judgment. Klapprott v. United States, 335 U.S. 601 (1949). Second, Rule 60(b)(6) relief was appropriate for a litigant against whom judgment was entered by a judge who had improperly refused to recuse himself in the proceeding. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988). Third, Rule 60(b)(6) relief was appropriate where the trial court granted the government's motion to strike the non-moving party's answers and claims in a property forfeiture proceeding without first providing notice to the non-moving party and permitting a reply from the non-moving party, which, incidentally, was a violation of the trial court's own rules. U.S. v. 1982 Sanger 24' Spectra Boat, Serial No. SANSP69ZM82, R5-83-0015, Value Approximately $28,000.00, and Attached Trailer, Nevada License No. T61942, 738 F.2d 1043 (9th Cir. 1984). Fourth, Rule 60(b)(6) relief was appropriate where the losing party, through no significant fault of its own, failed to receive notice of the entry of judgment in time to file an appeal. Rodgers v. Watt, 722 F.2d 456 (9th Cir. 1983). Fifth, Rule 60(b)(6) relief may be appropriate when fraud has been committed on the court. Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1104 (9th Cir. 2006). Sixth, Rule 60(b)(6) relief may be appropriate when a litigant's attorney was grossly negligent. Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (citing In Community Dental Services v. Tani, 282 F.3d 1164 (9th Cir. 2002)).

Unlike the foregoing examples where litigants were faced with extreme and unexpected hardships that were largely no fault of their own, here Sutton is simply a former defendant "in the usual case [where] all federal-law claims [were] eliminated before trial" and the Gibbs values weighed in favor of relinquishing supplemental jurisdiction pursuant to § 1367(c)(2)-(3). Acri, 114 F.3d at 1001. That Sutton might have to defend himself (while being represented by the tax-payer-funded Attorney General of the State of California) against Morris in a California state court lawsuit does not amount to manifest injustice to Sutton. That Morris might add additional defendants in that state court lawsuit does not amount to manifest injustice to Sutton. That the Court denied as moot Sutton's procedurally defective summary judgment motion does not amount to manifest injustice to Sutton. That the Court made its dismissal decision before the pretrial conference and sixty days before the scheduled trial date does not amount to manifest injustice to Sutton. In short, here there are no extraordinary circumstances under Rule 60(b)(6), and for that reason Sutton's Rule 60(b)(6) motion will be denied.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

(1) Sutton's request for judicial notice (Doc. No. 54) is GRANTED; and

(2) Sutton's Rule 60(b)(6) motion (Doc. No. 50) is DENIED.

IT IS SO ORDERED.

Dated:  November 22, 2019                                    _____
                                                              SENIOR DISTRICT JUDGE